## Buster *v.* Humphreys *et al.*

*(Circuit Court, W. D. Missouri, W. D. March 29, 1888.)*

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—UNAVOIDABLE ACCIDENT.

Where a freight train breaks in two, and the engineer's signal of "down breaks" frightens plaintiff's team, which runs between the two sections, and is killed, but there is no evidence that the train broke by fault of defendant, or that there was negligence in' discovering the break, or stopping the rear section, there is negligence on neither side, and no recovery can be had.

At Law.

Action by plaintiff, C. W. Buster, against defendants, Solon Humphreys and Thomas E. Tutt, receivers of the Wabash, St. Louis & Pacific Railroad, to recover damages for stock killed.

*C. W. Freeman,* for complainant.

*George S. Grover* and *John W. Henry,* for defendants.

THAYER, J.   Compensation is sought in this proceeding in the sum of $570 for a two-horse team, a wagon, and set of double harness, which were run over by one of defendants' freight trains at a railroad crossing from one-eighth to one-fourth mile east of Arnold Station, in Clay county, Mo., under the following circumstances, and on December 4, 1886:   Plaintiff's hired man was driving the team and wagon in question eastwardly from said station along a country road, which runs parallel with and very near to defendants' railroad track, for a short distance east of the station, and then crosses the track at right angles.   As he approached the crossing, a freight train also approached the crossing from the east. As the engine passed the team, or shortly after, the engineer discovered, or was made aware that the train (consisting of 21 cars) had broken into two parts.   The usual signal (three short sharp whistles, once repeated) was immediately given for "down brakes" on that portion of the train which had become detached from the engine.   According to the driver's testimony the horses took fright at the unusual noise made by the engine, broke from his control, and attempted to cross the railroad track through the opening between the two sections of the train. They were caught, however, on the crossing by the rear section of the train, and killed.

My first impression, gathered from the oral testimony, was that neither party concerned in the accident was guilty of negligence.   The further testimony which has been submitted in the shape of the depositions of the train-men has tended to confirm that impression.   The signal given for "down brakes," at which the horses took fright, which was the immediate cause of the disaster, appears to have been the usual signal which, under the circumstances, it was the duty of the engineer to give to prevent a collision between the front and rear sections of the train. Plaintiff's counsel insists, however, (and in that view I concur,) that it is proper to go back a step in the line of causation and inquire—*First*, if the train broke without fault on the part of the defendants, their servants, or agents; and, *second*, if the train-men exercised ordinary diligence in discovering the break, and in arresting the motion of the rear section after the break was discovered.   As to the first question, there is little room for doubt.   The train separated eight car-lengths back from the engine by the breaking of a coupling pin.   The pin in question was made by a reputable manufacturer; it was of approved size and strength, and such as are ordinarily used on first-class roads, and when found after the accident showed no outward evidence of being defective.   Furthermore, there is no evidence that on the occasion in question it had been subjected to any unusual strain by the negligence of the engineer in handling the engine.   It appears that the speed of the train was checked somewhat as it neared Arnold Station, and then accelerated when the station was found to be clear.  Such action on the part of the engineer, while it may have produced a strain on the coupling pin, cannot be esteemed a negligent act, because it was necessary to check the motion of the train as it approached the station, and because the evidence fails to show that in this instance he either arrested or increased the motion of

the train suddenly, so as to impose an extraordinary strain on the couplings. The evidence, in my opinion, is also insufficient to prove that the train-men failed to exercise ordinary care in discovering the break, and in stopping the rear section of the train. From all the circumstances of the case, it is apparent that the break was discovered within a few moments after it occurred. As the track at the point where the break occurred was straight, a short time would necessarily elapse before it could be observed by persons stationed at the front or rear end of the train. According to the testimony. the brakeman at the forward end of the train was at his post, and acted with ordinary diligence. The conductor and other brakemen appear to have been in the caboose. The conductor says that he was in the cupola of the caboose, and on watch, but could not see the break, and was not advised of it until he heard the signal for " down breaks," and that he and the rear brakeman immediately set the brakes when the signal was given, and stopped the rear section as soon as possible. No regulation was shown from which it would appear that it was either the conductor's duty, or that of the rear brakemen, to remain on the top of the cars at all times, or to be there when they passed the point where the accident occurred. Furthermore, there is no necessary conflict between the testimony of the conductor and the witness Cooper, who was the only witness for plaintiff who gave any testimony tending to show negligence. Cooper's testimony does not show that the conductor was not on watch in the cupola, and it does not show that either he or the rear brakeman failed to set the brakes as soon as they heard the signal, or that they might have discovered the break earlier. It is obvious, that from their position it was impossible to see the break until a considerable space intervened between the two sections of the train. There is no doubt in my mind that they acted with due diligence as soon as they were advised that the train had parted. Self-preservation would naturally induce such conduct, and the presumption is that they so acted. In the absence of any proof that the train-men were not at their several posts of duty when the break occurred, it appears to me that there is no fair pretense for saying the break ought to have been discovered earlier, and that the rear section should have been stopped before it reached the crossing. Upon the whole I conclude that the collision was wholly fortuitous. The loss which plaintiff sustained is attributable solely to accident, and there can be no recovery. The intervening petition is accordingly dismissed.